IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DAVID SPICER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-1966-CFC-SRF |
| | ) | |
| CITY OF DOVER, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this employment discrimination action is a partial[1] motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the City of Dover ("Dover"), Marvin Mailey ("Mailey"),[2] Robin Christiansen ("Mayor Christiansen"),[3] Timothy Slavin ("Slavin"),[4] Donna Mitchell ("Mitchell"),[5] Kimberly Hawkins ("Hawkins"),[6] David Anderson ("Anderson"),[7] and Roy Sudler ("Sudler")[8] (collectively, but excluding Dover, "defendants").[9]  (D.I. 9)  For the

---

[1] Defendants move to dismiss all counts in the amended complaint except for Count I (race discrimination in violation of Title VII) and Count II (retaliation based on race in violation of Title VII), both of which are alleged against only defendant City of Dover.  (D.I. 10 at 3) Defendant James Hutchinson did not join the motion to dismiss; therefore, this Report and Recommendation does not address any pending claims against him.  (D.I. 9; D.I. 10)
[2] Former Dover chief of police.  (D.I. 5 at ¶¶ 16, 59)
[3] Mayor of Dover.  (D.I. 5 at ¶¶ 15, 37)
[4] Dover city council president.  (D.I. 5 at ¶¶ 17, 37)
[5] Acting Dover city manager.  (D.I. 5 at ¶¶ 19, 37)
[6] Dover director of human resources.  (D.I. 5 at ¶¶ 20, 37)
[7] Dover city councilman.  (D.I. 5 at ¶¶ 21, 41)
[8] Dover city councilman.  (D.I. 5 at ¶¶ 22, 39)
[9] The briefing for the pending motion is as follows: defendants' opening brief (D.I. 10), plaintiff's answering brief (D.I. 18), and defendants' reply brief (D.I. 20).

following reasons, the court recommends GRANTING-IN PART and DENYING-IN-PART

defendants' motion.

## II.    BACKGROUND[10]

In 2015, for the purpose of hiring a chief of police, Dover established a Police Chief

Selection Committee ("the committee")[11] comprised of the mayor, the city council president, the

chair of the public safety and advisory committee, the city manager, and the director of human

resources.  (D.I. 5 at ¶¶ 33, 36)  In December 2016, Paul Bernat, the then-chief of police,

announced that he would retire effective January 17, 2017, which created a job opening for chief

of police.  (*Id.* at ¶ 35)  Among thirty-four candidates, six received interviews, including plaintiff

David Spicer ("plaintiff") and Mailey, who was deputy chief of police at the time.  (*Id.* at ¶ 56)

The committee eventually recommended Mailey for the chief of police job.  (*Id.* at ¶ 57)  Upon

the committee's recommendation, Mayor Christiansen nominated Mailey for chief of police to

---

[10] The facts in this section are based upon allegations in the complaint, which the court accepts as
true for the purposes of the present motion to dismiss.  *See Umland v. Planco Fin. Servs.*, 542
F.3d 59, 64 (3d Cir. 2008).

[11] The amended complaint does not reference the law or laws that established the committee,
governs the committee, or prescribes the process by which the committee and, more broadly,
Dover selects a chief of police.  (D.I. 5)  However, the court takes judicial notice of Chapter 62,
Article II, Section 62-32 of the Dover Code of Ordinances, which is available at
https://library.municode.com/de/dover/codes/code_of_ordinances.  *See Hena v. Vandegrift*, 2020
WL 1158640, at *25 (W.D. Pa. Mar. 11, 2020) (collecting cases permitting judicial notice of
municipal ordinances under Fed. R. Evid. 201(b)).  The ordinance states:

> A police chief selection committee comprised of the mayor, council president, chair
> of the safety advisory and transportation committee, city manager, and human
> resources director shall advise the mayor on the nomination of the police chief. The
> mayor shall nominate a duly qualified chief of police, whose appointment shall be
> effective upon confirmation by the city council. The chief of police shall be subject
> to removal at any time by the mayor, with the affirmative vote of two-thirds of the
> members elected to the city council, and in accordance with 11 Del. C. Ch. 93 -
> Police Chief Due Process.

City of Dover, Del. Code of Ordinances, Ch. 62, art. II § 62-32(a) (2015).

the Dover City Council.  (*Id.* at ¶ 59)  The Dover City Council confirmed Mailey's selection on

May 4, 2017.  (*Id.*)

Plaintiff has been a police officer in the Dover Police Department since September 22,

1997.  (*Id.* at ¶¶ 27–28)  Plaintiff received a promotion to operations division commander on July

3, 2015.  (*Id.* at ¶ 34)  Plaintiff applied for the chief of police job after Paul Bernat retired but

was not hired.  (*Id.* at ¶¶ 45, 59)  Plaintiff filed a grievance with Mailey alleging that racial

discrimination played a role plaintiff's being passed over for chief of police.  (*Id.* at ¶ 63)

Plaintiff's grievance was denied.  (*Id.* at ¶ 67)  Plaintiff subsequently applied and interviewed for

the deputy chief/major position.  (*Id.* at ¶ 69)  Plaintiff was not given the deputy chief/major job

and was simultaneously transferred from his job as operations division commander to

administrative division commander—a significant reduction in both responsibility and

opportunity for advancement.  (*Id.* at ¶¶ 71–75)  On April 30, 2019, Mayor Christiansen

announced Mailey would retire as chief of police.  (*Id.* at ¶ 76)  On October 3, 2019, plaintiff

again applied for the chief of police job, but this time he did not receive an interview.  (*Id.* at ¶¶

82–83)  Plaintiff is Caucasian; Mailey is African American.  (*Id.* at ¶¶ 89, 93)

Plaintiff initiated this action on October 16, 2019.  (D.I. 1)  Plaintiff filed an amended

complaint on December 6, 2019.  (D.I. 5)  Plaintiff alleges he was denied the chief of police job

because of his race and was subsequently retaliated against for filing a grievance.  (*Id.* at ¶¶ 95,

104)  Based on these factual allegations, plaintiff brings several claims: Count I—racial

discrimination in violation of Title VII, Count II—retaliation based on race in violation of Title

VII, Count III—violation of 42 U.S.C. § 1981, Count IV—violation of 42 U.S.C. § 1981 based

on retaliation, Count V—violation of 42 U.S.C. § 1983, Count VI—a defamation claim against

3

Mayor Christiansen, Count VII—breach of the implied covenant of good faith and fair dealing, and Count VIII—a substantive due process claim under 42 U.S.C. § 1983.

### III.  LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff.  *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted).  This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's analysis is a context-specific task

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

As a preliminary matter, defendants move to dismiss Count VII of the amended complaint, an alleged breach of the implied covenant of good faith and fair dealing.  (D.I. 5 at ¶¶ 135–38; D.I. 10 at 5)  Early in plaintiff's answering brief he agrees to dismiss his claims for breach of the implied covenant of good faith and fair dealing.  (D.I. 18 at 3)  Later, however, plaintiff asserts, without citation or support, that his claim for breach of the implied covenant is legally valid.  (*Id.* at 19)  Because plaintiff first conceded the point and then failed to support his bald assertion of the claim's validity, the court recommends granting defendants' motion to dismiss Count VII of the amended complaint.

Defendants move to dismiss Counts III, IV, V, VI, and VIII of the amended complaint for various reasons.  (D.I. 10 at 3–5)  Plaintiff opposes defendants' motion as related to these counts and requests leave to amend the complaint if the court dismisses any of his claims.  (D.I. 18 at 3, 3 n.2)  The court addresses each count and argument in turn below.

### a.   The particularity of the amended complaint

Defendants argue the court should dismiss Counts III, IV, V, and VIII of the amended complaint because those counts do not contain allegations attributable to individual defendants.[12] (D.I. 10 at 9–10)  Plaintiff argues these counts amount to properly pled claims for relief against all defendants, except for Hawkins.[13]  (D.I. 18 at 3–7)

_____

[12] In the alternative, defendants request that the court require plaintiff to file a more definitive statement under Fed. R. Civ. P. 12(e).  (D.I. 10 at 10 n.12)
[13] As discussed in section IV.e, *infra*, plaintiff agrees to dismiss his claims against Hawkins in her individual capacity.  (D.I. 18 at 5)

### i.  Counts III and IV, Plaintiff's § 1981 Claims

Plaintiff argues the amended complaint adequately pleads individual liability under

§ 1981.  (D.I. 18 at 4–5)  Defendants argue the court should dismiss the amended complaint

because, despite plaintiff's inclusion of some defendant-specific factual allegations, the amended

complaint fails to allege how these allegations relate to plaintiff's substantive claims.  (D.I. 10 at

10)

Counts III and IV of the amended complaint allege that defendants violated 42. U.S.C. §

1981.  (D.I. 5 at ¶¶ 105–117)  Section 1981 "prohibits racial discrimination in the making and

enforcement of contracts and property transactions."  *Brown v. Phillip Morris, Inc.*, 250 F.3d

789, 796 (3d Cir. 2001).  To state a claim for a violation of § 1981, a plaintiff must allege that (1)

the plaintiff is a member of a protected class; (2) the defendant acted with the intent to

discriminate on the basis of race; and (3) the discrimination relates to an activity listed in the

statute, like the right to make and enforce contracts.  *Campbell v. Navient Corp.*, C.A. No. 18-

1625-RGA, 2019 WL 3802654, at *4 (D. Del. Aug. 13, 2019) (citing *Anderson v. Wachovia*

*Mortg. Corp.*, C.A. No. 06-567-SLR, 609 F. Supp. 2d 360, 369–70 (D. Del. 2009).  To satisfy

the notice pleading standard of Fed. R. Civ. 8, a civil rights complaint must state "the conduct,

time, place, and persons responsible" for the alleged civil rights violations.  *Evancho v. Fisher*,

423 F.3d 347, 353 (3d Cir. 2005) (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80

(3d Cir. 1980)); *see also Tani v. FPL/Next Era Energy*, C.A. No. 10-860-LPS, 2013 WL

3957710, at *6 (D. Del. Jul. 29, 2013) (dismissing a complaint because "[t]he allegations are not

directed to any individual Defendant").

Counts III and IV of the amended complaint contain no specific allegations as to any

individual defendant other than Dover.  (D.I. 5 at ¶¶ 105–117)  Plaintiff alleges that he had a

"contractual employment relationship with Defendant City of Dover." (*Id.* at ¶ 106)  The amended complaint contains no allegation that any of the individual defendants entered into, made, or enforced a contract with plaintiff.  (D.I. 5)  Counts III and IV of the amended complaint refer to defendants generally, without specifying which defendants are being accused of what discriminatory activity.  (*Id.* at ¶¶ 105–117)  For example, the amended complaint states that "Plaintiff's race was a motivating factor in Defendant's decision to fail to promote Plaintiff to the Chief of Police position," and "Defendants purposefully denied Plaintiff promotional opportunities." (*Id.* at ¶¶ 108, 116)  Plaintiff's generalized reference to "Defendants," without further distinction, "fail[s] to apprise each Defendant of his or [her] alleged discriminatory acts." *Tani v. FPL/NextEraEnergy*, C.A. No. 10-860-LPS, 2013 WL 3957710, at *6 (D. Del. Jul. 29, 2013).  Further, the amended complaint does not contain any allegation identifying the contract at issue or any individual defendant's racial discrimination in the making or enforcement of a contract with plaintiff, which 42 U.S.C. § 1981 requires plaintiff to allege.  *See Campbell*, 2019 WL 3802654, at *4.

Individuals can be held liable for a § 1981 violation only if they "are personally involved in the discrimination" against the plaintiff and "if they intentionally caused the [employer] to infringe" the plaintiff's § 1981 rights.  *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987).  The amended complaint alleges that Dover, "acting through the individual Defendants[,] as well as other management and administrative personnel of the City[,] are responsible for the discriminatory conduct towards Plaintiff on account of his race." (D.I. 5 at ¶ 112)  Plaintiff directs the court to several allegations in the complaint[14] that

---

[14] The amended complaint contains allegations that mention particular defendants as shown in parentheses:  Mayor Christiansen (D.I. 5 at ¶¶ 59–60); Sudler (*Id.* at ¶¶ 38–39, 43, 54); Anderson

precede Counts III and IV and specifically mention the individual defendants and their allegedly

discriminatory activity.  (D.I. 18 at 4–5)  The allegations plaintiff refers to[15] fail to provide

notice to defendants about the people responsible for plaintiff's alleged civil rights violations

related to the enforcement of a contract.  *See Evancho*, 423 F.3d at 353; *Brown*, 250 F.3d at 796.

Therefore, the court recommends granting defendants' motion to dismiss Counts III and IV of

the amended complaint.

### ii.  Counts V and VIII, Plaintiff's § 1983 Claims

Defendants argue the allegations in amended complaint lack the individualized

particularity required to plead § 1983 claims as a matter of law.  (D.I. 10 at 10)  Plaintiff argues

the allegations in the amended complaint sufficiently identify defendants and their respective

conduct to make § 1983 claims against all defendants.  (D.I. 18 at 5–7)

Counts V and VIII of the amended complaint allege that defendants violated 42. U.S.C. §

1983.  (D.I. 5 at ¶¶ 118–29, 139–46)  Count V is § 1983 Monell claim.  (*Id.* at ¶¶ 118–29)  In

order to make a successful § 1983 claim "against multiple defendants, a plaintiff must show that

each individual defendant violated his constitutional rights."  *Estate of Smith v. Marasco*, 430

---

(*Id.* at ¶¶ 43, 53); Slavin (*Id.* at ¶¶ 43, 48, 49, 51); Defendant James Hutchinson, a named defendant but not a movant here (*Id.* at ¶ 58); and Mitchell (*Id.*).

[15] The amended complaint contains the following defendant-specific allegations: "Mayor Christiansen then nominated Marvin Mailey as Chief of Police."  (D.I. 5 at ¶ 59)  Sudler "campaign[ed] for applicant Marvin Mailey . . . and used his position as Councilman to unlawfully influence . . . Dover's selection process."  (*Id.* at ¶¶ 38–39, 54)  Anderson opined that he opposed a bachelor's degree requirement for the chief of police job "because he had intimate knowledge Marvin Mailey did not obtain a Bachelor's degree."  (*Id.* at ¶¶ 43, 53)  "Slavin recommended that the Chief of Police job description and requirements should be substantially minimized, including the removal of the requirement of a Bachelor's degree" and "made a motion to hire Marvin Mailey for the Chief of Police position."  (*Id.* at ¶¶ 43, 48)  "Mitchell approved the nomination" of Mailey for chief of police.  (*Id.* at ¶ 58)  All of these allegations are incorporated by reference into the allegations under Counts III and IV of the amended complaint.  (*Id.* at ¶¶ 105, 114)

F.3d 140, 151 (3d Cir. 2005).  Individual "policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzern Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir.1989)).

Count VIII is a substantive due process claim under § 1983.  (D.I. 5 at 139–46)  To make a civil rights claim under § 1983, the complaint must contain specific allegations that each defendant had "personal involvement in the alleged wrongs."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Id.*; *see also Blake v. Danberg*, C.A. No. 11-146-LPS, 2012 WL 2126916, at *2 (D. Del. Jun. 8, 2012) (dismissing a complaint without "allegations . . . directed toward the named defendants").

The amended complaint contains allegations related to each individual defendant with sufficient particularity to survive a Rule 12(b)(6) motion a state a Monell claim and a substantive due process claim.  *See Rode*, 845 F.2d at 1207.  The amended complaint contains allegations of each defendant's personal involvement in selecting Mailey, instead of plaintiff, for chief of police, which plaintiff alleges was racially motivated and violative of his constitutional rights. (D.I. 5 at ¶¶ 5, 38, 43, 48–49, 53–54, 58–60, 110–12)  The allegations cited demonstrate each defendant's involvement in Mailey's selection as chief of police.[16]  (*Id.*)  Therefore, the court recommends denying defendants' motion to dismiss Counts V and VIII of the amended complaint.

---

[16] *See supra* n.15 for quotations of the individualized allegations.

b. **Legislative immunity**

Next, defendants argue the amended complaint should be dismissed in its entirety against defendants in their individual capacities because they have legislative immunity.  (D.I. 10 at 11–14)  Plaintiff argues defendant-members of the selection committee exercised administrative, not legislative, authority and, therefore, are not entitled to legislative immunity.  (D.I. 18 at 7–8)

Like federal and state legislators, local legislators enjoy absolute immunity from suit[17] arising out of their legislative activities.  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *In re Montgomery Cty.*, 215 F.3d 367, 376 (3d Cir. 2000).  The Third Circuit applies a two-part test to determine whether an action is "legislative for immunity purposes."  *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994).  The action must be both substantively and procedurally legislative.  *Id.*  An action is substantively legislative if it "involve[s] a policy-making or line-drawing decision."  *Id.*  Although not dispositive of the substantively legislative inquiry, "[w]here the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration."  *Baraka v. McGreevey*, 481 F.3d 187, 198 (3d Cir. 2007) (quoting *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 774 (3d Cir. 2000)); *Acierno*, 40 F.3d at 610–12.  An action is procedurally legislative if "undertaken through established legislative procedures."  *Acierno*, 40 F.3d at 610.

The committee, the mayor, and the members of the city council engaged in administrative, not legislative activity when they respectively recommended, nominated, and confirmed—i.e. hired—Mailey as chief of police, instead of plaintiff.  *See Bogan*, 523 U.S. at 56 (considering "the termination of a position" legislative activity because "unlike the hiring or

---

[17] *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998) ("[L]ocal legislators are . . . absolutely immune from suit under § 1983 for their legislative activities.").

firing of a particular employee," eliminating the position altogether might "have prospective implications that reach well beyond the particular occupant of the office"). "[T]he hiring and firing of specific individuals generally is not protected by legislative immunity because it is an administrative action." *Leapheart v. Williamson*, 705 F.3d 310, 314 (8th Cir. 2013) (citing *In re Montgomery Cty.*, 215 F.3d at 376–77).

The committee—which included moving-defendants Slavin and Mitchell—recommended Mailey to Mayor Christiansen for chief of police. (D.I. 5 at ¶¶ 57–58) Then, Mayor Christiansen nominated Mailey for the job to the Dover city council—which included moving-defendants Slavin, Anderson, and Sudler—who confirmed Mailey's nomination. (*Id.* at ¶ 59) In *Bogan*, the Supreme Court specifically set aside "hiring or firing" an employee when defining the type of activity that is legislative. 523 U.S. at 56. The determination of whether an action is substantively legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. The committee, mayor, and city council acted to replace a retiring employee when going through the selection process that ended in Mailey's becoming chief of police—a "decision[] affecting a single individual." *See Acierno*, 40 F.3d at 610. Selecting Mailey as chief of police involved zero "policy-making of a general purpose or line drawing." *In re Montgomery Cty.*, 215 F.3d at 376 (internal quotations omitted).

Defendants argue *Aitchison v. Raffiani*, 708 F.2d 96 (3d Cir. 1983) stands for the proposition that Third Circuit law requires a "functional approach" to determining the scope of legislative immunity with respect to individuals in executive offices. (D.I. 10 at 11–12; D.I. 20 at 4) The court agrees and applies the *Aichison's* functional approach here. The committee, the mayor, and the city council lack legislative immunity, not because of their location within a particular branch of government, but specifically because they performed an administrative, not

legislative function—hiring a Dover employee.  *See Aitchison*, 708 F.2d at 99 ("[W]e look to the function the individual performs rather than his location within a particular branch of government.").

Defendants' attempt to further rely on *Aitchison* fails because of its distinguishable facts. In *Aitchison*, the defendants, municipal government officials, had absolute legislative immunity when they introduced and passed an ordinance that "abolished [plaintiff's] position of assistant building inspector" with the goals of improving "efficiency and economy."  *Id.* at 97.  Courts have routinely distinguished between hiring or firing an employee, which occurred here, and creating or eliminating a position altogether, which occurred in *Aitchison*.  *See, e.g.*, *Bogan*, 523 U.S. at 56 (proposing and voting for an ordinance and introducing a budget that eliminated a department with a single employee was legislative); *Kalinoski v. Lackawanna Cty.*, 511 F. App'x. 208, 212–13 (3d Cir. 2013) (considering "restructuring" an office and "eliminating a position" in the process legislative); *Baraka*, 481 F.3d at 199 ("[W]e have drawn a distinction between the elimination of a position and the termination of an individual employee."); *In re Montgomery Cty.*, 215 F.3d at 376 (distinguishing the administrative "decision to eliminate a particular employee" from the legislative elimination of "the position that employee happens to hold"); *McHugh v. Bd. of Educ. of Milford Sch. Dist.*, 100 F. Supp. 2d 231, 238 (D. Del. 2000) (considering the "adoption of the administrative reorganization plan" which "eliminate[d] the position of Supervisor of Transportation/Visiting Teacher from its administrative structure" a legislative activity).

Defendants argue the distinction between voting on an ordinance, as occurred in *Aitchison*, and the selection process here, undertaken pursuant to Dover's ordinance, is irrelevant.  (D.I. 20 at 4)  The court disagrees.  Although the selection committee, mayor, and

city council acted pursuant to an ordinance, the function they collectively performed amounts to an individual personnel decision, detached from policy making.  The ordinance itself prescribes the means by which the committee, the mayor, and the council perform an administrative function.  *See* City of Dover, Del. Code of Ordinances, Ch. 62, art. II § 62-32 (2015).  No Supreme Court or Third Circuit case law suggests that action taken pursuant to an ordinance *per se* amounts to legislative activity.  Contrary to defendants' arguments, hiring a chief of police is administrative activity under Supreme Court and Third Circuit precedent.  *See Bogan*, 523 U.S. at 56; *Kalinoski*, 511 F. App'x. at 213; *Baraka*, 481 F.3d at 199–200; *In re Montgomery Cty.*, 215 F.3d at 377.  Therefore, defendants fail the substantive prong of the legislative immunity test articulated in *Acierno*.  Because defendants fail to meet the substantively legislative requirement for absolute immunity from suit, the court recommends denying defendants request for dismissal on immunity grounds.

### c.  Committee members merely advise the mayor

Defendants argue committee members cannot be liable for plaintiff's alleged civil rights violations or Title VII claims because the committee members did not employ plaintiff and, therefore, could not cause plaintiff to suffer an adverse employment action.  (D.I. 10 at 4, 14–15)  Defendants highlight the language of the applicable ordinance, which charges the committee with advising the mayor about who to nominate for chief of police.  (*Id.* at 14)  Plaintiff responds that he does not assert Title VII claims against committee members in Counts III, IV, V, and VIII of the amended complaint.  (D.I. 18 at 15)  Counts III, IV, V, and VIII of the amended complaint state civil rights claims against the individual committee members and others based on 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment of the United States Constitution, not Title VII.  (D.I. 5 at ¶¶ 105–29, 139–46)  Defendants argument fails because

13

these claims have nothing to do with the status of committee members as plaintiff's employer. *See Robinson v. Hicks*, 450 F. App'x 168, 173 (3d Cir. 2011) (internal quotations, alterations, and citations omitted) ("To establish a prima facie § 1981 claim, the [plaintiffs] must demonstrate (1) that they belong to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts."); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)) ("A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."). Therefore, the court recommends denying defendants' motion on this basis.

### d. Mayor Christiansen's statement

Defendants argue the court should dismiss Count VI of the amended complaint, a defamation claim against Mayor Christiansen, because Mayor Christiansen's alleged defamatory statement amounts to an opinion, which cannot support a defamation claim under Delaware law. (D.I. 10 at 4, 15–16) Plaintiff argues that the statement is not an opinion. (D.I. 18 at 15–19)

Under Delaware law, defamation includes five elements: "(1) a defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Jordan v. Town of Milton*, C.A. No. 11-514-GMS, 2013 WL 105319, at *15 (D. Del. Jan. 3, 2013) (citing *Eaton v. Raven Transp., Inc.*, 2010 WL 4703397, at *2 (Del. Super. Ct. Nov. 15, 2010)).

The parties focus on the first element: whether Mayor Christiansen's statement can be considered defamatory. (D.I. 10 at 15–16; D.I. 18 at 15–19) "A pure statement of opinion is constitutionally protected and can not be a defamation as a matter of law." *Gill v. Delaware*

*Park, LLC*, C.A. No. 03-436-SLR, 294 F. Supp. 2d 638, 647 (D. Del. 2003) (citing *Riley v. Moyed*, 529 A.2d 248, 251 (Del. 1987)).  Whether the alleged defamatory statement constitutes an opinion is a question of law for the court to decide "from the position of an ordinary reader." *Id.*  The Delaware Supreme Court applies a four-part test to determine whether a statement amounts to a "constitutionally protected expression[] of pure opinion." *Riley*, 529 A.2d at 251–52.  Delaware courts (1) "analyze the common usage or meaning of the challenged language;" (2) "determine whether the statement can be objectively verified as true or false;" (3) "consider the full context of the statement;" and (4) "consider the broader social context into which the statement fits." *Id.* (internal citations omitted).

In April 2019, Mayor Christiansen held a press conference with Mailey to announce Mailey's retirement.  (D.I. 5 at ¶ 76)  During the press conference, a reporter asked Mayor Christiansen about litigation stemming from Mailey's selection process.  (*Id.* at ¶ 77)  Mayor Christiansen responded that "there was a candidate, referring to Plaintiff, that was not qualified and he could not help if the person was upset, he was not selected for the position."  (*Id.*)  Plaintiff alleges that Mayor Christiansen's statement amounts to slander *per se*.  (*Id.* at ¶ 132)  However, Mayor Christiansen's statement that plaintiff "was not qualified" is a pure opinion about plaintiff's qualifications.  The common usage and meaning of a statement about an individual's qualifications for a job are subjective opinion.  *See Riley*, 529 A.2d at 251–52.  Therefore, the court recommends Count VI of the amended complaint be dismissed.

### e.  Hawkins did not recommend Mailey

Defendants also move for the dismissal of all claims in the amended complaint against Hawkins.  (D.I. 10 at 4–5)  Defendants argue that the court should dismiss the amended complaint in its entirety as related to Hawkins because she voted against Mailey during his

selection process for chief of police.  (*Id.* at 16–17)  Plaintiff agrees to dismiss his claims against Hawkins in her individual capacity but made no argument about his claims against Hawkins in her official capacity.  (D.I. 18 at 5)  Because plaintiff failed to argue that the court should not dismiss Hawkins in her official capacity, the court recommends granting defendants' motion to dismiss Hawkins from this case entirely.

## V.    CONCLUSION

For the foregoing reasons, the court recommends:

(1) GRANTING defendants' motion to dismiss Counts III and IV without prejudice;

(2) DENYING defendants' motion to dismiss Counts V and VIII;

(3) GRANTING defendants' motion to dismiss Count VI with prejudice; and

(4) GRANTING defendants' motion to dismiss Hawkins from the case with prejudice.

Following the expiration of the objections period and in the event the court adopts the recommendation of allowance of amendment, the court recommends that the District Court thereafter permit plaintiff ten (10) days to file an amended complaint.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

16

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.


Dated: July  31, 2020

_____
Sherry R. Fallon
United States Magistrate Judge